UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| Chevelle Leftwich, | ) |
| | ) CIVIL ACTION NO. 9:09-1995-JFA-BM |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| City of Columbia Police Department and | ) |
| City of Columbia, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Fifth Judicial Circuit, asserting claims for wrongful arrest, malicious prosecution, violation of civil rights, and breech of duty of care by the Defendant Columbia Police Department. This action was subsequently removed to United States District Court by the Defendant on the grounds of federal question jurisdiction, asserting that Plaintiff is pursuing claims under, inter alia, 42 U.S.C. § 1983. Following the removal, Plaintiff filed an amended complaint adding the City of Columbia as a party Defendant.

The Defendants filed a motion to dismiss and/or for summary judgment on May 7, 2010. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion on May 28, 2010, following which the Defendants filed a reply memorandum on June 4, 2010.



The Defendants' motion is now before the Court for disposition.

**Background and Evidence**[1]

Plaintiff alleges in his amended complaint that on or about June 11, 2007, an armed robbery occurred in the City of Columbia. Plaintiff alleges that the Defendants received information that the robbery had been committed by a black man with a nickname (street name) of a northern city of the United States. Plaintiff's alleges that his nickname is "New York", and that he was ultimately prosecuted for this crime. Plaintiff further alleges that the Defendants learned that the nickname of the perpetrator of the armed robbery was actually "Chicago", that the victim of the robbery was shown an inappropriate photo lineup which did not include a photograph of "Chicago", and that DNA and fingerprint analysis evidence actually excluded Plaintiff as the perpetrator. Plaintiff alleges that he was nevertheless prosecuted, although the charge against him was dismissed by the Richland County Solicitor on or about April 30, 2008. See generally, Amended Complaint.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Ida Menendez, who attests that she is an investigator with the Columbia Police Department. Menendez attests that she was assigned to investigate the robbery of Jacob Perritt that occurred on June 11, 2007 while he was delivering pizzas to the Bloomwood Apartments. Menendez attests that, prior to that time, she had been investigating a series of armed robberies in that vicinity that had been committed by African American males. Menendez attests that those investigations were hindered because the victims were Hispanic and feared deportation because of

---

[1] The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



their immigration status.  However, the victims in those cases did identify Dennis Richardson and an "African American male who wore his hair in braids" as the people involved in these robberies. Menendez attests that there were two African American males in the area who fit that description, although the victims indicated that one of these individuals, a man named Portee, was not the person who had robbed them and that he was taller than the robber.  Menendez attests that Plaintiff is somewhat shorter that Portee, fit the general description, and therefore became a person of greater interest.  Menendez attests that she did not know Plaintiff's name at that time.

      Menendez attests that she had a marked police unit identify Plaintiff through a field interview, and then found that Plaintiff did not have a South Carolina driver's license or I.D. card. Menendez attests that when she could not get a picture of the Plaintiff from South Carolina records, she ran Plaintiff's criminal history and found that he had been arrested on several occasions in New York for fraud, criminal trespass, possession of a controlled substance, and robbery.  Menendez attests that she then contacted police in New York City to obtain a booking photograph to use in photo lineups.  Menendez further attests that Dennis Richardson's cousin, Santana Roberts, implicated both Richardson and Plaintiff in these robberies, with Roberts telling her that she would attract Hispanics with offers of sex for cash and that Richardson and Plaintiff would then rob them. Menendez attests that she was unable to bring charges against the Plaintiff on those robberies because she lost contact with Roberts after she made this disclosure, and because of lack of cooperation from the Hispanic victims.

      Menendez attests that she met with Richardson, who is currently serving a prison sentence for armed robbery, and told him she believed Richardson was involved in the robberies taking place in the neighborhood.  She also asked Richardson to tell the Plaintiff that she wanted to



meet with him. Menendez attests that Plaintiff did not contact her, although he did change his appearance shortly thereafter by removing his braids and wearing his hair in an afro.

Menendez attests that after she was assigned to investigate the robbery of Mr. Perritt, she reviewed the incident report prepared shortly after the robbery, a copy of which is attached to her affidavit as Exhibit 1. Menendez attests that she then met with Perritt on June 15, 2007, who provided a sworn statement about the robbery, a copy of which is attached to Menendez's affidavit as Exhibit 2. Menendez attests that Perritt indicated to her that he [Perritt] had remained calm during the robbery and concentrated on noting the characteristics of the robber who was closest to him and who took the money from his pocket: that the robber wore a hooded sweat shirt and a bandana, but that he could see substantially all of his face, that the robber spoke with a New York accent, and that he believed he could identify the robber if he saw him again and also felt that he could identify the robber's voice. Menendez attests that she showed Perritt a photo lineup to see if he could identify either of the men who had robbed him, which consisted of three separate pages of photographs with Richardson on one, Portee on another, and Plaintiff on another, each page consisting of six photographs of similar size. Menendez attests that, after viewing the eighteen photographs, Perritt positively identified the Plaintiff as being one of the two men who had robbed him. Menendez has attached a copy of the photo lineup documentation to her affidavit as Exhibit 3. Menendez attests that she also showed Perritt photographs of different types of firearms, and that he was not only able to identify the gun but also provide detail as to where there were scratch marks on it. A copy of the firearm photos presented to Perritt is attached to Menendez's affidavit as Exhibit. 4.

Menendez attests that, at this point, she believed she had probable cause to charge Plaintiff with the armed robbery of Mr. Perritt, as Perritt had provided certain and unequivocal



positive identification of the Plaintiff as one of the robbers. Perritt had also been able to identify the type of gun used in the robbery and provide details of scratch marks on the gun, and was able to relate that one of the robbers spoke with a New York accent. Menendez attests that the fact that Plaintiff lived in the area of the robbery, matched the description of a robber in both this robbery and the Hispanic robberies, that Plaintiff had previously been arrested for similar crimes, spoke with a New York accent, and had changed his appearance after he became aware that he was a person of interest, all contributed to her conclusion that Perritt's identification of the Plaintiff was credible. Menendez attests that after discussing the evidence and information she had available to her at the time with the Richland County Solicitor's office, she was authorized by the Assistant Solicitor to seek a warrant against the Plaintiff for armed robbery.

Menendez attests that on July 5, 2007, she appeared before a ministerial recorder for the City of Columbia and made full disclosure of the facts known to her, and that the ministerial recorder found that probable cause existed and issued Warrant K-265138 for the arrest of Plaintiff for armed robbery. A copy of this warrant is attached to Menendez's affidavit as Exhibit 5. Plaintiff was thereafter arrested for armed robbery on July 7, 2007 and taken to the Alvin S. Glenn Detention Center. Menendez attests that Plaintiff was subsequently transported to the Columbia Police Department later that day for an interview, at which time Plaintiff indicated he was innocent but refused to provide a written statement. Menendez attests that Plaintiff's fingerprints were taken as part of the arrest process, and that when asked to provide a DNA sample, Plaintiff did provide one.

Menendez attests that Plaintiff was indicted by the Richland County Grand Jury on November 14, 2007, a copy of the indictment and true bill being attached to her affidavit as Exhibit 6. Menendez attests that she was unable to search Plaintiff's apartment, because Plaintiff would not



disclose its location, and that, as is common in robbery cases, she did not find any DNA or fingerprint evidence from the robbery, and therefore such evidence could not be used to either confirm or exclude Plaintiff as one of the robbers.

Menendez attests that, as the trial approached, she became aware that Plaintiff intended to offer an alibi defense, but that she did not interview the person who was to provide the alibi because the information provided from defense counsel indicated that the person could not say that Plaintiff has been at his residence at the time of the robbery. Menendez has attached a copy of the written notification of alibi defense from Plaintiff's defense lawyer to her affidavit as Exhibit 7. Menendez attests that Plaintiff's trial then began on April 29, 2008, and continued into April 30, 2008.

Menendez attests that, during the lunch break on April 30, she encountered a confidential informant who provided her information about the case that Menendez thought would need to be disclosed to the defense. Menendez attests that she told the Assistant Solicitor who was trying the case about this information, which would not have required the case to be dismissed on its merits and was not inconsistent with the guilt of the Plaintiff, and that the Assistant Solicitor gave her the choice of either making the defense aware of the identity of the confidential informant, so that they could be called as a witness, or dismissing the case. Menendez attests that she choose to dismiss the case in order to protect the safety of the information, and the Assistant Solicitor then made a motion to dismiss, which was granted.

Menendez attests that she is aware that Plaintiff contends that the robbery was committed by a person with the nickname "Chicago", but Menendez does not believe that to be the case. Menendez attests that "Chicago" was not in the area at the time of the robbery and did not


match the description of the robbers. Further, "Chicago" was brought to the Solicitor's office at the time of trial to give him an opportunity to plead to the robbery of Mr. Perritt, but although he did admit to robberies that he had committed, he refused to confess to that particular robbery. Menendez attests that she continues to believe that Plaintiff was one of the people who robbed Mr. Perritt, and that at trial Perritt had the opportunity to see the Plaintiff in person for the first time and indicated that he was sure that Plaintiff was one of the men who had robbed him. Menendez further attests that, after hearing Plaintiff speak, Perritt verified that the voice was that of the robber.

Menendez attests that she is the familiar with the policies and procedures of the City of Columbia Police Department; that there is no policy, procedure, or custom to violate the constitutional rights of suspects or persons accused of a crime; nor is there any policy, procedure or custom of intentionally withholding exculpatory or other material evidence from the Solicitor's Office, a ministerial recorder, or the Grand Jury; and that an investigator is required to make a good faith effort to fully disclose all material facts to those authorities and is subject to discipline for faiing to do so. Menendez further attests that all of her actions with respect to the investigation of the incident involving the Plaintiff were made in the good faith performance of her duties as a police investigator, and that at all times she acted without malice and in the belief that she had probable cause for her actions. See generally, Menendez Affidavit, with attached Exhibits. In addition to this evidence, the Defendants have also submitted excerpts from Plaintiff's deposition of December 9, 2009, Perritt's deposition of February 24, 2010, as well as copies of Plaintiff's supplemental answers to Defendants' Interrogatories dated November 2, 2009.

In opposition to the Defendants' motion, Plaintiff has submitted excerpts from his deposition, from the deposition of Ida Menendez of February 24, 2010, and from Perritt's deposition



of February 24, 2010. Plaintiff has also submitted an affidavit from Lori Van Wallendael, who attests that she is an Associate Professor of Psychology at the University of North Carolina at Charlotte, and that she has testified as a qualified expert witness on eye witness memory in several states, including South Carolina. Van Wallendael attests that in the spring of 2008 she reviewed a summary of the identification made in the case of State v. Leftwich, including police reports, witness statements and lineups, and heard the testimony of the victim in court on April 29, 2008, following which she proffered testimony before the court as to the validity of the eye witness' identification in the case. Van Wallendael further attests that she had recently reviewed the discovery in the case at bar, and still believes that certain factors "were serious enough to render the identification extremely unreliable" in her opinion. Van Wallendael attests that psychological research shows that eye witness errors are a serious problem in the legal system, citing to certain studies and experiments: and that given the totality of the circumstances in this case - the fact that the witness was under stress, being threatened with a weapon, and saw only the perpetrator's eyes for a very brief amount of time - she believes that an accurate lineup identification would be almost impossible. Van Wallendael further attests that, in the absence of additional evidence against the suspect, she does not believe that the identification met the standard for probable cause for an arrest. See generally, Van Wallendael Affidavit. Plaintiff has also provided a copy of a report from Van Wallendael dated December 4, 2009, which reiterates the conclusions stated in her affidavit, as well as copies of the arrest warrant issued in this case, Plaintiff's consent to obtain a DNA sample, a copy of the incident report of the robbery, and a copy of Menendez's affidavit.

       As an attachment to their reply memorandum, the Defendants have submitted additional excerpts from Menendez's deposition of February 24, 2010.



**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

**I.**

**(Federal Civil Rights Claim)**

In his fourth cause of action, Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging that his arrest, detention, and prosecution violated his constitutional rights. Plaintiff has not sued the arresting officer, however, but has instead chosen to sue the City of Columbia[2] and/or the City of Columbia Police Department, for whom Mendendez worked.

With respect to Plaintiff's claim that his constitutional rights were violated by the City of Columbia and/or the Columbia Police Department, a city or city department may be sued in federal court under 42 U.S.C. § 1983 only if "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Social Servs., 436 U.S. 658, 690-691 (1978). These

---

[2] The Defendants assert as part of their motion for summary judgment that the Plaintiff improperly amended his complaint to add the City of Columbia as a party Defendant. However, for purposes of resolution of Plaintiff's federal claim, this Court does not need to decide that issue.



Defendants cannot be held liable just because Menendez worked for the city, as there is no governmental liability under § 1983 based upon the doctrine of respondeat superior, nor may a governmental entity be held liable under § 1983 merely because it employs a tortfeasor. Monell, 436 U.S. at 691-692. Rather, a city or city department may only be liable for damages when the execution of the city's policy or custom results in an alleged injury. Id. at 694; Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988). As stated by the Supreme Court:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985)(plurality opinion).

Plaintiff has failed to cite to any evidence sufficient to create a genuine issue of fact as to whether the actions of the police officer in this case, to the extent they even amounted to a constitutional violation, were the result of a custom or policy of the Defendant city or city police department. Indeed, Plaintiff does not even allege anywhere in his complaint that Menendez's actions were the result of a custom or policy of the Police Department or the City of Columbia. Rather, in setting forth the actions that *Menendez took* with respect to the investigation and bringing of charges in this case, Plaintiff simply substitutes "the Defendants" in place of Menendez when describing Menendez's conduct. Plaintiff cites to no specific policy of the City of Columbia or the Columbia Police Department which refers to the conduct alleged in this case, or which would serve to create a genuine issue of fact as to whether either named Defendant condoned, through a policy



or procedure of the City or Police Department, improper detentions and arrests and/or prosecutions by police officers under the circumstances set forth in the evidence before the Court.

Although Plaintiff does not in his amended complaint allege the existence of any policy or custom which gave rise to the conduct of which he complains, in Plaintiff's supplemental answers to Defendants' interrogatories of November 2, 2009 (Defendants' Exhibit 13), in response to the question of whether Plaintiff was contending that the City of Columbia has a policy, custom, or procedure which caused or compelled the constitutional deprivations alleged in Plaintiff's fourth cause of action, Plaintiff responded that he lacked sufficient documentary evidence to confirm the Defendants' policies, but that there was an "unwritten policy" and that the officers involved in the investigation would testify as to such policy and procedure. However, none of the evidence submitted to the Court by either Plaintiff or the Defendants, including the deposition excerpts provided, references any such policy or procedure, and Plaintiff has therefore provided no evidence whatsoever to show the existence of any such policy or procedure.

Finally, in his memorandum opposing summary judgment, Plaintiff argues that the City has a "policy" of failing to properly train its police officers, which is demonstrated by the poor investigation conducted by Menendez in this case. However, Defendants correctly point out in their reply memorandum that Plaintiff made no such allegation in his complaint, and in any event has provided no evidence to show what the training protocols of City Police Officers are in order to establish any inadequacies in the training provided.[3]

---

[3]Conversely, Defendants note that South Carolina authorizes the Criminal Justice Academy to be responsible for all training and certification for law enforcement officers in the State of South Carolina; see S.C. Code Ann. §§ 23-23-10 and 23-23-20; and Menendez attests in her affidavit that
(continued...)



Plaintiff cannot simply make general and conclusory claims that some unspecified policy or custom of the City and/or the Police Department (or lack thereof) exists and has resulted in a violation of his constitutional rights, offer no supporting evidence, and expect to survive summary judgment. See Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. Hence, even if the evidence otherwise showed that Menendez violated Plaintiff's constitutional rights, her actions cannot be imputed to the City of Columbia or the Columbia Police Department, because there is no evidence of any official policy or custom of the City or Police Department which would have resulted in the allegedly improper actions taken by the police officer. Monell, 436 at 691; cf. Doe v. Broderick, 225 F.3d 440, 446 (4th Cir. 2000)[Police officers violation of the Fourth Amendment does not give rise to municipal liability where the record contains no evidence that the alleged deprivation occurred because of a custom or practice]; Carter v. Morris, 164 F.3d 215, 220 (4th Cir. 1999)[Holding that "meager history" of isolated incidents does not establish a municipal custom].

The Defendants named in this case are therefore entitled to dismissal of Plaintiff's federal constitutional claim. Monell, 436 U.S. at 691-692.

---

³(...continued)
she has completed the course of study at the South Carolina Criminal Justice Academy, in addition to also receiving annual training at the City of Columbia Police Department. Menendez Affidavit, ¶ 4. Plaintiff has provided no evidence to dispute Menendez's testimony regarding the extent of her training, or to show that the training she received was in any way deficient or would have resulted in unconstitutional conduct by Menendez.



**II.**

**(Remaining State Law Claims)**

With respect to the state law tort claims asserted against these Defendants, presumably under the South Carolina Tort Claims Act; see S.C. Code Ann. § 15-78-10, et. seq.; the Defendants have addressed these state tort claims in their brief and urge this Court to grant summary judgment on those claims. However, if the Court adopts the recommendation set forth herein with regard to Plaintiff's federal claim, his pendant state law tort claims will be the only claims remaining in this lawsuit, and when federal claims presented in a case originally filed in state court are dismissed, any remaining state law claims are ordinarily remanded back to state court for resolution under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Melon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996).

This doctrine recognizes the state court's role in determining whether summary judgment on state law claims is warranted, and, if summary judgment were to be denied, that it would be much more appropriate for those state law claims to be considered and tried by the state courts. Therefore, if the Court adopts the recommendation for dismissal of Plaintiff's lone federal claim, Plaintiff's three (3) remaining state law causes of action should be remanded back to state court for disposition. Gibbs, supra.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted** with respect to Plaintiff's federal claim (Fourth Cause of Action), and that this



claim be dismissed.  This case should then be **remanded** back to state court for disposition of Plaintiff's three (3) remaining state law causes of action.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 21, 2010

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).